Taliaferro, J.
The plaintiff having a judgment against Kloppenburg and Schneider in solido and another against Schneider alone, caused executions to issue, and proceeded to seize the entire contents of a barroom or drinking saloon kept by Schneider at the corner of -G-ravier and Baron ne streets. Mrs. Lenes, claiming to be the owner *483 of the building- in which this saloon is kept, and alleging that she leased the ground floor of the same to Schneider for the purpose of keeping a coffeehouse, filed a petition of opposition to the plaintiff’s seizure, on the ground that she has by law the lessor’s privilege upon all the effects of her lessee thus seized, and that she has also by law the right of pledge on the same; that the seizures made by the plaintiff are violative of her said rights, and are wrongful and injurious, and will inflict upon her irreparable loss and injury. She prayed that the plaintiff be restrained by injunction from proceeding with the said seizure, and that she recover from the plaintiff two hundred and fifty dollars as special damages for attorney’s fees, reserving her right of action against the said parties for the recovery of all damages, loss or injury she may hereafter sustain from the illegal acts and proceedings of the plaintiff in the premises. The plaintiff filed an exception to the opponent’s right to an injunction, and took a rule upon her to have it dissolved. Judgment was. rendered in favor of the opponent perpetuating the injunction, releasing the seizure, and awarding the opponent one hundred dollars special damages as attorney’s fees. From this judgment the plaintiff has appealed. The plaintiff let the premises to Schneider by written lease for the term of five years and four months, to be computed from the tenth of May, 1870, at the rate of $425 per month, for which in the usual manner of such contracts sixty-four notes were executed and delivered to the lessor for the monthly rent of the property. We understand the position of the opponent to be, that she maintains the right to keep in her possession the effects in controversy, without molestation as a subsisting pledge for the payment of her rent, and that the property so subject to her privilege can not be legally removed from the premises, or in any manner disposed of before her demand for rent is paid. This right is. claimed under several articles of the Civil Code, and especially under articles 2705 and 3218. Article 2705 declares that “the lessor has for the payment.of his rent, and other obligations of the lease, a right of pledge on the movable effects of the lessee, which are found on the property leased. Article 3218 provides that “the right which the lessor has over the products of the estate, and on the movables which are found on the place leased for his rent, is of a higher nature than mere privilege. The latter is only enforced on the price arising from the sale of movables to which it applies. It does not enable the creditor to take or keep the effects themselves specially. The lessor on the contrary may take the effects themselves and retain them until he is paid.” The opponent’s right, it is held, is sustained by the jurisprudence of the State, and we are referred to the case of James Robb v. William F. Wagner, 5 An. Ill, and to Arick v. Walsh & *484 Boisseau efc al. 23 Au. 605. The expressions used in the two articles of the Code make it that the lessor’s rights are secured by more than a privilege, and we must interpret these articles so as to protect the lessor’s right fully over the movable effects subject to his privilege in order that such effects may be wholly and entirely subjected to the payment of the lessor’s rent to the exclusion of every inferior privilege. But there are higher privileges than those of the lessor. Take for example the privilege of the laborer on the crop grown on the plantation of the lessor cultivated by a lessee who owes his landlord rent for it. To the laborer who produces the crop the law accords the first privilege on the crop. Shall we say that the lessor may detain the products of the plantation until the laborer pays him the sum his lessee owes him for rent before he can enforce his first privilege upon those products 9 In such a case we apprehend the proceeds of those products would have to be distributed according to law if they were insufficient to pay both privileges. If they sufficed to pay only the laborer’s privilege the lessor would receive nothing. So also article 3256 Civil Code subordinates the lessor’s privilege to the charges for selling the movables subject to it. Why should not the same rule hold as between the lessor and those having inferior rights 9 If the proceeds of the movables subject to the lessor’s privilege sufficed to pay the lessor, leaving no surplus, the lessor would take it all, and claims of a lower grade would go unpaid. If there were a surplus remaining over and above the amount owing to the lessor, he would have no right to this surplus, and it would go to the creditor holding the next rank. In the interpretation of laws it is the duty of courts to give them that due force and effect that all who are governed by them may receive the benefit and protection they are entitled to under them.
It is a trite maxim that the property of a debtor is the common pledge of his creditors; by which we understand that every creditor has the right to look to the property of his debtor for the payment of his debt. Where the law creates privileges in favor of certain creditors on the property of the common debtor, it leaves to the creditors not preferred their residuary rights whatever they may be against the property of the debtor, notwithstanding the privileges imposed upon it, and they may exercise those rights subsidiarily to those enjoyed by the preferred creditors; and the reason of this right is obvious, for the value of the property may exceed in amount the debt of the privileged creditor and leave something for the ordinary creditor. It seems to us that the interpretation of the articles of the Code referred to, contended for in behalf of the opponent tends to ignore this well settled principle which accords to all creditors the equal right to pursue the property of the common debtor. The terms used in article 3218 of the *485 Civil Code require a more liberal construction than the one offered in defense of the opponent’s claim. The right of the lessor to detain the movables subject to his privilege until his rent is paid is not incompatible with the right of an ordinary creditor to enforce his rights-against the same property without depriving the lessor of any portion of his debt for rent. Tiie payment spoken of in that article does not-necessarily mean payment of the lessor’s debt by the adverse creditor before the latter is permitted to proceed against the property. There are weighty objections to such an interpretation. The value of the property could not well be ascertained except by a sale of it. It might pay only a ¿art of the lessor’s debt, it might pay all of it, or it might pay more than all of it. Again, the creditor seeking to enforce his claim (in this case the plaintiff is a judgment creditor) might be unable to advance the amount of the lessor’s debt for rent, and thus by his poverty be debarred from pursuing a legal right which if enforced would realize money sufficient to pay the lessor in full and leave a surplus for himself. But it is argued on the side of the opponent that a seizure of the effects of the lessee subject to the lessor’s privilege is an interference with his rights of detention of the property, and if permitted would greatly deteriorate the value of the effects subject to his pledge, because by the use of them in the establishment of the lessee, they would yield a geater revenue and be a subsisting security to the lessor for his rent; whereas, by a sale of them a far less value would be realized. These are considerations that can not be taken into view in determining the legal rights of the parties. The elements for such an estimate are few and simple. The lessee owes the lessor a certain sum of money for rent of a coffeehouse, for which he is entitled to a privilege on all the movable property of the lessee in that establishment, consisting of his outfit, stock in trade, and paraphernalia of every kind used in carrying on the business he is engaged in. The lessor is entitled to the proceeds of that property if sold, to the extent of his debt for rent, if so much is realized by the sale. If a less sum is made he takes it all. He can not prevent a sale of the property on the pretense that it would not bring the amount of bis debt. No right of his is violated by a sale made in the exercise of a legal right of another against the property. If the lessor’s right is preserved, if his debt is paid in whole or in part only, if the entire proceeds of the property subject to his privilege are insufficient to pay it all, he has no just ground to complain.' His rights can only be exercised concurrently with the rights of others on the same property. His assumption of the right of detention of the property continuously unless his entire privileged debt is paid, would put the rights of others in abeyance and destroy that condition of equality before the law that *486 all are entitled to occupy in asserting their rights in the courts of the country.
The authorities relied upon on the part of the opponent we are not prepared to admit are conclusive. The case in 5 An. 11.1 is very briefly reported. It seems to consist of an abstract from the judgment rendered in the case by the district judge and adopted as the decree of this court.
The facts of the case are not fully given. At all events the purport of the decision seems to be that, where property on which a landlord has a privilege for rent has been seized on execution at the suit of a third person, the landlord has two remedies, either by way of third opposition or by injunction. The case in 23 An. 605, like the one in 5 An., merely recognizes the right of detention as expressed in the Code. In the case in 23 An. the only question was, whether a lessor who has not recorded his lease has a better right to the proceeds of cotton, mules, etc., on the leased premises sold under execution, than the seizing creditor who has not himself registered his seizure. In the case of Robert Lynn Tanner, Administrator of William B. Pierce’s estate, v. Asa Tanner, 6 Rob. 35, the question came up more directly in a contestation between a lessor and an overseer for superiority of privilege on the crop raised on a plantation leased to the defendant. There, as in the case at bar, the lessor asserted his right to be of a higher nature than a mere privilege and claimed to have the right to take the effects themselves on which his lien existed and retain them until he was paid. The court said in that case : “ This right of detention which is a part of the lessor’s remedy, affords him, to be sure, much greater security; but like the pledgee and the creditor, having only a privilege, he must have the thing subject to his lien sold in the manner provided by law. When this takes place, if a conflict should arise in consequence of adverse claims on the same fund, a distribution of it must be made,” etc. We can find no satisfactory reason why the lessor’s rights should not be determined and his privileged claim ascertained and settled like those of every other creditor holding privilege or mortgage. We suppose that nothing is better established in our jurisprudence than that a creditor who has a mere right of preference on the proceeds of property seized under execution, has not the legal right to arrest the sale of the property, but is given the right to interpose his opposition and claim the proceeds under a distribution to be made according to law. In the case of Herbert’s Heirs v. Babin et al. 6 N. S. 614, Judge Porter said “the plaintiff's right is one of privilege, and as the law requires that property put up at auction by the sheriff shall be sold subject to all the privileges and hypothecations with which it is burdened, their position can not in any respect be altered *487 by the sale, and consequently they have no authority to prevent it. This property may sell for more than will satisfy the plaintiff’s demand, and the defendants have consequently a right, even admitting their adversary’s privilege is of a superior nature, to cause the thing subject to it to be sold in order that they may get the overplus.” This doctrine was again announced in 7 N. S. 281, and has been repeated in various cases since that time.” It was broadly laid down in Wallace v. Bourg, sheriff, 14 An. 104, that “ the existence of a privilege or mortgage on property will not authorize an injunction to arrest its sale.”
In the case of Glerses v. McHatton, ibidem 560, where the question was whether property seized under execution was held by simulated title or by pledge, the court sustained the seizure and said: “ Considered as a pledge of the property, the plaintiff had no right to enjoin its sale under the executions of the defendants. He should in strictness have proceeded by way of third opposition to claim a priority upon its proceeds.”
Our conclusion is that the injunction was illegally issued, and that the plaintiff’s remedy was by third opposition, claiming her priority of privilege on the proceeds of the property seized and subject to the lessor’s privilege.
It is therefore ordered that the judgment of the district court be annulled, avoided and reversed. It is further ordered that the injunction be dissolved; that the plaintiff, Josephine Elliot, wife of Joseph Lenes, as principal, and Alfred Phillips, her surety, be condemned to pay in solido to the defendant in injunction ten per cent, on the amount of the judgments enjoined as damages, and all costs of suit.